UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

GGNSC LOUISVILLE HILLCREEK, LLC,
et al.,                                                                                          Petitioners,

v.                                                                      Civil Action No. 3:17-cv-439-DJH

ESTATE OF ROBERT C. BRAMER and
MARGARET A. BRAMER,                                                          Respondents.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

      Margaret A. Bramer, individually and as administratrix for the Estate of Robert C. Bramer, sued various GGNSC entities[1] and Chris Wilson, in her capacity as Administrator of Golden Living Center – Hillcreek, in Jefferson County Circuit Court on July 28, 2017. (*See* Docket No. 1-1) Margaret Bramer alleges that GGNSC violated Robert Bramer's rights under Kentucky law and negligently injured him, ultimately causing his wrongful death. (*See id.*, PageID # 18) GGNSC filed a petition under § 4 of the Federal Arbitration Act, seeking to compel arbitration of the underlying claims; to stay the pending state-court action; to enjoin Margaret Bramer from pursuing her claims in state court; and for related relief. (D.N. 1; D.N. 23) GGNSC alleges that a prior, signed arbitration agreement covers all of the claims at issue. (D.N. 1)

      Margaret Bramer moved to dismiss GGNSC's petition on various grounds. (D.N. 11) GGNSC then sought leave to file an amended petition to address the January 26, 2015 Arbitration Agreement in light of the power of attorney that Margaret produced with her motion to dismiss. (D.N. 13) The Court granted the motion to amend and denied the pending motions to dismiss and

---

[1] These companies include GGNSC Louisville Hillcreek LLC, d/b/a Golden Living Center – Hillcreek; GGNSC Administrative Services, LLC; GGNSC Clinical Services LLC; and Hillcreek Leasing, LLC, d/b/a Hillcreek Rehabilitation and Care. (Docket No. 1-1)

1

for expedited consideration as moot. (D.N. 22) Meanwhile, GGNSC filed a motion to consider the enforceability of the January 26, 2015 Alternative Dispute Resolution Agreement and to compel arbitration. (D.N. 19) For the reasons explained below, the Court will deny GGNSC's requests to compel arbitration.

## I. BACKGROUND

Golden Living Center – Hillcreek, a nursing home, admitted Robert Bramer on July 13, 2016. (D.N. 1-1, PageID # 13, 17) While there, Margaret Bramer alleges Robert "fell out of bed, sustaining a severe blow to the head, resulting in a brain bleed and, ultimately, his death on July 28, 2016." (D.N. 11-1, PageID # 3) Robert had previously been admitted to the Hillcreek facility on two other occasions—January 5 and 26, 2015—and on all three occasions was presented with an Admission Agreement and an Alternative Dispute Resolution Agreement. (D.N. 17, PageID # 464) The parties agree that the third arbitration agreement is unsigned, but there is a dispute as to the validity and sufficiency of the signatures on the first two arbitration agreements. (*Id.*) Each arbitration agreement required the parties to arbitrate

> all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards.

(D.N. 13-4, PageID # 378) The agreements provided that Robert and his legal representatives would be bound to arbitrate. (*Id.*, PageID # 377) Each included a remain-in-effect clause stating that if the agreement was not revoked within thirty days of signing, it "shall remain in effect for all care and services rendered to the Resident at or by the Facility regardless of whether the Resident is subsequently discharged and readmitted to the Facility without renewing, ratifying, or

acknowledging this Agreement." (D.N. 11-2, PageID # 174) Likewise, all three admission agreements stated: "[I]f you execute, or have executed, an Alternative Dispute Resolution Agreement with us in connection with any admission to our LivingCenters, then that Agreement shall be, and remain, binding upon you, and upon us, in accordance with the terms that are set forth in that Agreement." (*Id.*, PageID # 169)

Margaret Bramer asserts various claims of negligence against GGNSC on Robert's behalf, as well as personal claims for loss of consortium and wrongful death. (*See* D.N. 1-1) According to the state-court complaint, GGNSC failed to discharge its obligations of care to Robert, and in so failing, caused Robert to suffer injuries, which resulted in his wrongful death. (*See id.*) In this case, GGNSC seeks to compel arbitration of Margaret's claims pursuant to the signed arbitration agreements and the Federal Arbitration Act. (D.N. 1; D.N. 19)

## II. ANALYSIS

Under the Federal Arbitration Act, an agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Sixth Circuit has instructed that "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable[,] meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). The Court applies state contract law to determine whether an arbitration agreement is enforceable. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) (citations omitted).

Under Kentucky law,

> [w]hile there is no question "that the party seeking to enforce an agreement has the burden of establishing its existence, . . . once prima facie evidence of the agreement has been presented, the burden shifts to the party seeking to avoid the agreement." A party "me[ets] the prima facie burden by providing copies of [a] written and signed agreement[ ] to arbitrate."

*MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013) (alterations and omission in original) (internal citation omitted) (quoting *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004)).

The party seeking to avoid arbitration bears "a heavy burden" "to prove there is no agreement." *Id.* (quoting *Louisville Peterbilt*, 132 S.W.3d at 857). To survive a motion to compel arbitration, "the non-moving party must demonstrate that the validity of the agreement is 'in issue' by showing that there is a genuine issue of material fact as to the validity of the arbitration agreement." *Arnold v. Owensboro Health Facilities, L.P.*, No. 4:15-CV-00104-JHM, 2016 WL 502061, at *3 (W.D. Ky. Feb. 8, 2016). Margaret Bramer must come forward with sufficient evidence that, when viewed in the light most favorable to her, would permit "a reasonable finder of fact [to] conclude that no valid agreement to arbitrate exists." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

GGNSC argues that it has met its initial burden in establishing that an arbitration agreement exists by providing written and signed copies of the January 2015 Arbitration Agreements. (*See* D.N. 19-1, PageID # 509) *MHC Kenworth-Knoxville/Nashville*, 392 S.W.3d at 906. However, Margaret argues that simply providing any signed arbitration agreement is not sufficient and that GGNSC cannot meet its burden because the prior agreements were extinguished by the presentation of the July 2016 Arbitration Agreement, which remains unsigned and thus unenforceable. (*See* D.N. 20, PageID # 622)

4

Neither Margaret Bramer nor Robert Bramer signed the arbitration agreement or admission agreement presented for the July 2016 stay. (*See* D.N. 20, PageID # 617–18) Margaret contends that because she and Robert declined to sign the July 2016 Arbitration Agreement the two previous agreements were nullified, and no arbitration agreement was in effect for the July 2016 stay. (*See* D.N. 20, PageID # 622–27) Therefore, the Court must decide what effect, if any, the presentation of the July 2016 Arbitration Agreement has on the January 5 and January 26 Arbitration Agreements.

The Sixth Circuit's decision in *GGNSC Louisville St. Matthews LLC v. Badgett* is instructive. Joseph Badgett had signed an arbitration agreement at the time of his admission to GGNSC LivingCenter Mt. Holly. 728 F. App'x 436, 438 (6th Cir. 2018). Like the agreements at issue here, Badgett's arbitration agreement contained a remain-in-effect clause. *Id.* Upon a subsequent admission to LivingCenter St. Matthews, GGNSC presented Badgett with another admission agreement. *See id.* The admission agreement stated the following:

> This Agreement supersedes any prior admission contracts regarding your admission to our LivingCenter. However, if you execute, or have executed, an Alternative Dispute Resolution Agreement with us in connection with any admission to our LivingCenters, then that Agreement shall be, and remain, binding upon you, and upon us, in accordance with the terms that are set forth in that Agreement.

*Id.* at 439. Notwithstanding this language, GGNSC also presented Badgett with a new arbitration agreement. *Id.* Upon being presented with the second arbitration agreement, "Badgett signed below the line stating, 'The Alternative Dispute Resolution Agreement above set forth is hereby DECLINED.'" *Id.*

The Sixth Circuit concluded that "[b]y offering Badgett a choice [of whether to arbitrate], GGNSC indicated its intent to extinguish the first agreement by substituting it with a new agreement." *Id.* at 442. The court rejected GGNSC's contention that "the offering of the second

5

arbitration agreement meant nothing because the first agreement remained binding forever," finding that "[t]he proper interpretation of GGNSC's objective intent is that it again offered Badgett the choice of whether to submit to arbitration." *Id.* The court ultimately found that there was "no valid agreement to arbitrate . . . between the parties" and affirmed the lower court's denial of the motion to compel arbitration. *Id.* at 443.

Here, opportunity was given to sign the July 2016 Arbitration Agreement, and neither Margaret nor Robert signed. (*See* D.N. 11-2, PageID # 175–76) Like the agreement in *Badgett*, the July 2016 Arbitration Agreement included a signature line specifically to allow parties to decline arbitration. (*Id.*) While a signature on a line expressly declining arbitration and a failure to sign an arbitration form are factually distinct, as GGNSC argues (D.N. 21), under Kentucky law they do not lead to different legal conclusions.

Kentucky law recognizes that "an acceptance of an offer must be unequivocal in order to create a contract." *State Auto Ins. Co. v. Crenshaw*, No. 2011-CA-000932-MR, 2012 WL 4664553, at *6 (Ky. Ct. App. Sept. 28, 2012) (citing *Venters v. Stewart*, 261 S.W.2d 444, 446 (Ky. 1953)). It is not enough that the party's actions imply acceptance. *See id.* In this case, the July 2016 Arbitration Agreement itself also makes clear that the act of signing is required to bind the parties to the agreement. (*See* D.N. 11-2, PageID # 174 ("This agreement shall be binding upon the Facility *when signed* by or on behalf of the Resident . . . .") (emphasis added)) GGNSC informed potential residents that signing the agreement was not a requirement of admission, meaning that residents would not be bound by the terms of the agreement simply by agreeing to be admitted. (*See id.* ("signing of this Agreement is not a condition of admission to or residence in the Facility")) By choosing not to sign the July 2016 Arbitration Agreement, Margaret and Robert chose not to submit to arbitration and to retain their ability to litigate these issues in court.

GGNSC argues that even if Margaret and Robert rejected the July 2016 Arbitration Agreement, the January 26 Arbitration Agreement remains binding. (*See* D.N. 19, PageID # 525–27) Margaret, however, now maintains that the prior arbitration agreements were abandoned when GGNSC presented the Bramers with the choice to sign the July 2016 Arbitration Agreement. (*See* D.N. 20, PageID # 622–27)

Under Kentucky law, "a contract may be rescinded or discharged by acts or conduct of the parties inconsistent with the continued existence of the contract." *Texaco, Inc. v. Debusk*, 444 S.W.2d 261, 263 (Ky. 1969) (quoting 17A Am. Jur. 2d Contracts § 494 (since modified to § 517)). "While as a general rule a contract will be treated as abandoned or rescinded where the acts and conduct of one party inconsistent with its existence are acquiesced in by the other party, to be sufficient the acts and conduct must be positive and unequivocal." *Id.* Here, GGNSC's presentation of the July 2016 Arbitration Agreement and the Bramers' failure to sign it are "positive and unequivocal" indicators that the parties intended to abandon any previous agreement to arbitrate. *Id.*

The January 2015 Arbitration Agreements state that the agreements "shall remain in effect for all care and services rendered to the Resident at or by the Facility regardless of whether the Resident is subsequently discharged and readmitted to the Facility without renewing, ratifying, or acknowledging this Agreement." (D.N. 11-2, PageID # 174) GGNSC was not required to present the July 2016 Arbitration Agreement; it "could have easily refrained from presenting [Bramer] with a [third] arbitration agreement if it intended the [first two] agreement[s] to remain binding." *Badgett*, 728 F. App'x at 442. By leaving the July 2016 Arbitration Agreement unsigned, the Bramers acquiesced in GGNSC's abandonment of the earlier agreements. *See Texaco, Inc.*, 444 S.W.2d at 263; *Venters*, 261 S.W.2d at 446. Thus, regardless of the enforceability of the January

7

2015 Arbitration Agreements, no agreement to arbitrate covers Robert's July 2016 stay at Hillcreek.

**III. CONCLUSION**

GGNSC is unable to present this Court with evidence that "a valid agreement to arbitrate exists." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). Since GGNSC cannot meet its initial burden, the Court will deny GGNSC's petition to compel arbitration. As this was the sole dispositive issue before the Court, the case will now be dismissed. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) GGNSC's amended petition to compel arbitration (D.N. 23) and motion to consider the January 26, 2015 Arbitration Agreement and compel arbitration (D.N. 19) are **DENIED**.

(2) This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

September 26, 2018

**David J. Hale, Judge
United States District Court**